## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY VIOLA, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> TRANSFORMATIVE HEALTHCARE, LLC and COASTAL MEDICAL TRANSPORTATION SYSTEMS LLC, <br><br> *Defendants*. | **CLASS ACTION** <br><br> **Case No.: 1:24-cv-10150** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Anthony Viola, individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint and alleges the following against defendants Transformative Healthcare, LLC and Coastal Medical Transportation Systems LLC (collectively, "Defendants"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendants for their failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). The PII and PHI may have included victims' names, addresses, Social Security numbers, medical information (including COVID-19 testing or vaccination information) and information provided to Defendants in connection with employment or an application for employment.

2.      Defendants failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiff seeks, among other things, orders requiring Defendants to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.      Defendants have disclosed having "detected suspicious activity within our data storage archive" over eight months earlier, on or around April 21, 2023. Defendants subsequently determined that the activity started as early as February 17, 2023.

4.      Defendants did not complete their investigation of the Data Breach until December 27, 2023, when they reported having sent out notification letters to people whose PII and PHI were exposed by the Data Breach. Plaintiff received such a letter around that time. But that letter does not disclose what type of information was accessed in the Data Breach.

5.      As a business providing electronic health record storage services to affiliates that collect and store PII and PHI, Defendants knowingly obtained sensitive PII and PHI and have a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII and PHI to Defendants if they had known that Defendants would not ensure that they used adequate security measures.

6.      Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were exposed in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to Defendants' data security policies and practices.

## PARTIES

7.      Plaintiff Anthony Viola is a resident of Jamaica Plain, Massachusetts, who received services from Defendants and/or their affiliates. Mr. Viola received a letter from Defendants shortly after December 27, 2023, purportedly "to provide information regarding a security incident … that may have impacted some of your information."

8.      Defendant Transformative Healthcare LLC ("Transformative") is Delaware corporation, with its principal place of business in Newton, Massachusetts.

9.      Defendant Coastal Medical Transportation Systems LLC ("Coastal") is a Massachusetts corporation, with its principal place of business in Hyannis, Massachusetts. In late 2022, Coastal acquired Transformative, including its subsidiary Fallon Ambulance Services ("Fallon"). According to Defendants, Fallon ceased operations in December 2022, but maintained Plaintiff's and Class Members' PII and PHI on its computer systems thereafter.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a state other than Massachusetts, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

11.     This Court has personal jurisdiction over Defendants because Defendants maintain their principal places of business in Massachusetts and conduct substantial business in this District through their principal places of business; engaged in the conduct at issue herein from and within this District; and otherwise have substantial contacts with this District.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and because Defendants reside in this District, and this District and Division are where a substantial part of the acts, omissions, and events giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

### The Data Breach

13.     Coastal Medical describes itself as "a 24/7 emergency and non-emergency transportation systems serving healthcare institutions and patients across New England."[1] Coastal Medical claims to "provid[e] the highest quality of care with compassion, dignity, and respect for all customers and patients."[2]

14.     Due to the nature of the services they provide, Defendants acquire and electronically store PII and PHI. Defendants were therefore required to ensure that PII and PHI were not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent.

15.     On December 27, 2023, Defendants disclosed having "detected suspicious activity within our data storage archive" over eight months earlier, on or around April 21, 2023.[3] Defendants subsequently determined that the activity started as early as February 17, 2023.[4]

---

[1] About Us, available at https://www.cmtsma.com/about/ (last visited Jan. 18, 2024).

[2] Coastal Medical Transportation Systems, available at https://www.cmtsma.com (last visited Jan. 18, 2024).

[3] Notice of Data Breach, available at https://apps.web.maine.gov/online/aeviewer/ME/40/4ed066da-9f8f-4685-863a-e51c785d7744/56bd7f44-1d71-4138-b56a-ec1db5cfbb50/document.html (last visited Jan. 18, 2024).

[4] *Id.*

16.     On December 29, 2023, Transformative reported to the Office of the Maine Attorney General that 911,757 individuals were affected, including over 20,000 Maine residents.[5]

17.     Defendants' disclosures are otherwise deficient. They do not include basic details concerning the Data Breach, including, but not limited to, why PII and PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Defendants know about the degree to which the data has been disseminated.

18.     Defendants have not disclosed nearly all the details of the Data Breach and their investigation. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Defendants have taken to secure the PII and PHI still in their possession. Plaintiff seeks to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Defendants have proper measures in place to prevent similar incidents from occurring in the future.

**Defendants' Security Representations**

19.     During the period in which it was collecting PII and PHI from Class Members, Transformative's Privacy Policy began with the claim that "[s]ecuring data and protecting privacy is job #1 for us at Transformative Healthcare. Our customers trust us to provide

---

[5] Data Breach Notifications, available at https://apps.web.maine.gov/online/aeviewer/ ME/40/4ed066da-9f8f-4685-863a-e51c785d7744.shtml (last visited Jan. 18, 2024). *See also* Data Security Breach Reports, available at https://oag.my.site.com/datasecuritybreachreport/apex/ DataSecurityReportsPage (last visited Jan. 18, 2024) (over 3,000 Texans affected).

frictionless experiences, to keep your data safe and to protect your privacy and we're obsessed with delivering on that promise."[6]

20.    That Privacy Policy further claimed that "[w]e at Transformative Healthcare, along with our subsidiaries and affiliates …, respect your concerns about privacy and value our relationship with you," and that "Transformative is committed to providing a robust and comprehensive security program for its Services."[7]

21.    The Privacy Policy also details the types of data Transformative obtained from patients — all of which may have been exposed as a result of the Data Breach, including:

- Contact details (such as name, email and postal address and, telephone number);

- Business contact information (such as employer's name and address, job title and business email address and telephone number);

- Biometric data (such as facial images or scans);

- Physical characteristics (such as gender);

- Government-issued identification information (such as driver's license number, as well as copies of government-issued identification documents);

- Digital photographs (such as images from your mobile device camera);

- Demographic details (such as date of birth, race, ethnicity);

- Location information (such as GPS data from your mobile device to enable a location-based service);

---

[6] Privacy Policy, Jan. 19, 2022, available at https://web.archive.org/web/20220119 012600/https://transformativehc.com/privacy-policy/ (last visited Jan. 18, 2024).

[7] *Id*.

- Information about your health…;

- Contact information for family or others you would like us to contact;

- Survey information; and

- Other information you may provide to us or authorize to be provided to us (such as language preferences).[8]

22.    Transformative further claimed that it did "not share or otherwise disclose [personal] information except as described in this Privacy Policy."[9] But the Privacy Policy makes no reference to the disclosure of personal information to unauthorized third parties.

**The Healthcare Sector is a Primary Target for Data Breaches**

23.    Defendants were on notice that companies in the healthcare industry are susceptible targets for data breaches.

24.    Defendants were also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically

---

[8] *Id.*

[9] *Id.*

noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[10]

25.    The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[11], to 1,638 in 2021.[12] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[13]

26.    At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[14] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[15] Almost 50 percent of the victims lost their healthcare coverage as a result of the

---

[10] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last accessed Jan. 18, 2024).

[11] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/ business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Jan. 18, 2024).

[12] *See* Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed Jan. 18, 2024).

[13] *Id.* at 62.

[14] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed Jan. 18, 2024).

[15] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed Jan. 18, 2024).

incident, while nearly 30 percent said their insurance premiums went up after the event. Forty

percent of the customers were never able to resolve their identity theft at all. Data breaches and

identity theft have a crippling effect on individuals and detrimentally impact the economy.[16]

27.     Healthcare-related breaches have persisted because criminals see electronic

patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent

of participating hospital information security leaders reported having a significant security

incident in the previous 12 months, with a majority of these known incidents being caused by

"bad actors" such as cybercriminals.[17] "Hospitals have emerged as a primary target because they

sit on a gold mine of sensitive personally identifiable information for thousands of patients at any

given time. From social security and insurance policies, to next of kin and credit cards, no other

organization, including credit bureaus, have so much monetizable information stored in their data

centers."[18]

28.     The American Medical Association ("AMA") has also warned healthcare

companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue.
> AMA research has revealed that 83% of physicians work in a practice
> that has experienced some kind of cyberattack. Unfortunately, practices
> are learning that cyberattacks not only threaten the privacy and security
> of patients' health and financial information, but also patient access to
> care.[19]

---

[16] *Id.*

[17] *2019 HIMSS Cybersecurity Survey* (available at https://www.himss.org/
sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report. pdf) (last
accessed Jan. 18, 2024).

[18] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*,
Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-
from-email-spoofing-attacks) (last accessed Jan. 18, 2024).

[19] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*,
Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-

29.     As major healthcare services providers, Defendants knew, or should have known, the importance of safeguarding Plaintiff's and Class Members' PII and PHI entrusted to them and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Plaintiff and Class Members by virtue of a breach. Defendants failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**Defendants Store Plaintiff's and Class Members' PII and PHI**

30.     Defendants obtained and stored a massive amount of PII and PHI. As a condition of engaging in health care services, Defendants' affiliates required that patients entrust them with highly confidential PII and PHI.

31.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

32.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on Defendants to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

33.     Defendants were aware that the PII and PHI they collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

---

management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Jan. 18, 2024).

34.     PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[20] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[21]

35.     PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

36.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[22]

---

[20] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Jan. 18, 2024).

[21] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed Jan. 18, 2024).

[22] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed Jan. 18, 2024).

37.     The ramifications of Defendants' failure to keep Plaintiff's and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

38.     Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

39.     Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [23] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[24]

40.     Defendants knew, or should have known, the importance of safeguarding PII and PHI entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. Defendants failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[23] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed Jan. 18, 2024).

[24] Experian, The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed Jan. 18, 2024).

**The Data Breach Exposed Plaintiff and Class Members**
**to Identity Theft and Out-of-Pocket Losses**

41.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

42.    Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Defendants' policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII and PHI were reckless, or at the very least, negligent.

43.    In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Defendants' misfeasance.

44.    Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[25]

45.    As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a.    losing the inherent value of their PII and PHI;

b.    identity theft and fraud resulting from the theft of their PII and PHI;

---

[25] 2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Jan. 18, 2024).

    c.   costs associated with the detection and prevention of identity theft;

    d.   costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

    e.   lowered credit scores resulting from credit inquiries following fraudulent activities;

    f.   costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

    g.   the continued imminent injury flowing from potential fraud and identify theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

**Defendants' Lax Security Violates HIPAA**

46.    Defendants had a non-delegable duty to ensure that all PHI they collected and stored was secure.

47.    Defendants are bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

14

48.     These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

49.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

50.     HIPAA requires that Defendants implement appropriate safeguards for this information.

51.     Despite these requirements, Defendants failed to comply with their duties under HIPAA and their own Privacy Practices. In particular, Defendants failed to:

a.  maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.  adequately protect Plaintiff's and Class Members' PHI;

c.  ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.  implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e.  implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

     f.   implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

     g.   protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

     h.   ensure compliance with the electronic PHI security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

     i.   train all members of their workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

52.    Defendants failed to comply with their duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiff's and Class Members' PHI.

**Defendants Violated FTC Guidelines**

53.    The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Defendants from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

54.    The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[26]

55.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[27] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

56.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[28]

57.    The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting

---

[26] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Jan. 18, 2024).

[27] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Jan. 18, 2024).

[28] FTC, *Start With Security*, *supra*.

from these actions further clarify the measures businesses must take to meet their data security

obligations.

58.     Defendants failed to properly implement basic data security practices.

Defendants' failure to employ reasonable and appropriate measures to protect against

unauthorized access to Plaintiff's and Class Members' PII and PHI constitutes an unfair act or

practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

59.     Defendants were at all times fully aware of their obligation to protect Plaintiff's

and Class Members' PII and PHI because of their position as healthcare providers. Defendants

were also aware of the significant repercussions that would result from their failure to do so.

## CLASS ACTION ALLEGATIONS

60.     Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure,

Plaintiff seeks certification of a Class as defined below:

> All persons in the United States and its territories whose PII and/or PHI was
> compromised in the Data Breach.

61.     Excluded from the Class are Defendants, any entity in which Defendants have a

controlling interest, and Defendants' officers, directors, legal representatives, successors,

subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over

this matter, members of their immediate family, and members of their judicial staff.

62.     Plaintiff reserves the right to modify or amend the definition of the proposed

Class as additional information becomes available to Plaintiff.

63.     **Numerosity:** The Class Members are so numerous that individual joinder of all

Class Members is impracticable. Defendants have disclosed that the Data Breach affected at least

911,000 individuals. All Class Members' names and addresses are available from Defendants'

records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

64.    **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether and to what extent Defendants had a duty to protect the PII and PHI of Class Members;

b.    Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' PII and PHI;

c.    Whether Defendants had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d.    Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII and PHI;

e.    Whether Defendants failed to adequately safeguard the PII and PHI of Class Members;

f.    Whether Defendants failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.    Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

h.    Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Defendants' wrongful conduct;

i.    Whether Plaintiff and Class Members are entitled to restitution because of Defendants' wrongful conduct;

j.    Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k.    Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

65.    **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class Member, was disclosed by Defendants. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Defendants' common misconduct. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

66.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendants to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

67.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate

with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

68.    **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

69.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage in non-class litigation, since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and

individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

70.     The litigation of Plaintiff's claims is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

71.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

72.     Unless a class-wide injunction is issued, Defendants may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

73.     Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

## COUNT I
## NEGLIGENCE
### (on behalf of Plaintiff and the Class)

74.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

75.     Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that Plaintiff's and

Class Members' PII and PHI in Defendants' possession was adequately secured and protected, that Plaintiff's and Class Members' PII and PHI on Defendants' networks were not accessible to criminals without authorization, and that Defendants' employees tasked with maintaining such information were adequately trained on security measures regarding the security of Plaintiff's and Class Members' PII and PHI.

76.    Plaintiff and Class Members entrusted their PII and PHI to Defendants with the understanding that Defendants would safeguard their information, use their PII and PHI for business purposes only, and not disclose their PII and PHI to unauthorized third parties.

77.    Defendants knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiff's and Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiff and Class Members.

78.    Defendants also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII and PHI.

79.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape, including the explosion of data breaches involving similarly situated healthcare providers.

80.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' PII and PHI, the critical importance of providing adequate security of that information, the necessity for encrypting PHI stored on Defendants' systems, and that they had inadequate IT security protocols in place to secure Plaintiff's and Class Members' PII and PHI.

81.     Defendants' misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendants' misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

82.     Plaintiff and Class Members had no ability to protect their PII and PHI that was in Defendants' possession.

83.     Defendants were in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

84.     Defendants had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' PII and PHI within their possession was compromised and precisely the type(s) of information that were compromised.

85.     Defendants had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII and PHI.

86.     Defendants systematically failed to provide adequate security for data in their possession.

87.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII and PHI within their possession.

88.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII and PHI.

89.     Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class Members that the PII and PHI within Defendants' possession might have been compromised and precisely the type of information compromised.

24

90.    Defendants' breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII and PHI to be compromised.

91.    But for all of Defendants' acts of negligence detailed above, including allowing cyber criminals to access their systems containing Plaintiff's and Class Members' PII and PHI would not have been compromised.

92.    Plaintiff never transmitted his own unencrypted PHI over the internet or any other unsecured source.

93.    Following the Data Breach, Plaintiff's PII and PHI has been seized by unauthorized third parties who are now free to exploit and misuse that PII and PHI, and Plaintiff is unable to prevent its further dissemination. Plaintiff's PII and PHI are forever compromised.

94.    But for the Data Breach, Plaintiff would not have incurred the loss and publication of his PII and PHI and other injuries.

95.    There is a close causal connection between Defendants' failure to implement security measures to protect Plaintiff's and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members. Plaintiff's and Class Members' PII and PHI was accessed and compromised as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures and encryption.

96.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

97.     As a result of Defendants' negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII and PHI, which is still in the possession of third parties, will be used for fraudulent purposes.

98.     Plaintiff seeks the award of actual damages on behalf of himself and the Class.

99.     Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1) compelling Defendants to institute appropriate data collection and safeguarding methods and policies with regard to patient information; and (2) compelling Defendants to provide detailed and specific disclosure of what types of PII and PHI have been compromised as a result of the data breach.

## COUNT II
## NEGLIGENCE PER SE
### (on behalf of Plaintiff and the Class)

100.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

101.     Pursuant to HIPAA (42 U.S.C. § 1302d *et seq*.) and the FTC Act, Defendants were required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' PHI and PII.

102.     Defendants violated HIPAA by failing to comply with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored, and the exposure of Plaintiff's and Class Members' sensitive PII and PHI.

103.     Defendants breached their duties by failing to employ industry standard data and cybersecurity measures to ensure their compliance with those laws, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

104.    It was reasonably foreseeable, particularly given the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiff's and Class Members' PII and PHI in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendants' networks, databases, and computers that stored or contained Plaintiff's and Class Members' PII and PHI.

105.    Defendants' violations of HIPAA constitute negligence per se.

106.    Plaintiff and Class Members are within the category of persons HIPAA was intended to protect.

107.    The harm that occurred as a result of the Data Breach is the type of harm HIPAA was intended to guard against.

108.    Plaintiff's and Class Members' PII and PHI constitute personal property that was stolen due to Defendants' negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

109.    Defendants' conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' unencrypted PII and PHI, and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendants' conduct. Plaintiff and Class Members seek damages and other relief as a result of Defendants' negligence.

### COUNT III
### BREACH OF EXPRESS CONTRACT
#### (on behalf of Plaintiff and the Class)

110.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

111.    Plaintiff and Class Members entered into written agreements with Defendants in the course of medical services and related services Defendants provided to Plaintiff and Class

Members. The agreements involved a mutual exchange of consideration whereby Defendants provided these services in exchange for payment from Class Members, Class Members' insurance carriers, and/or government programs remitting payment on Class Members' behalf.

112.    Plaintiff and Class Members and/or their insurance carriers paid Defendants for their services and performed under these agreements.

113.    Defendants' failure to protect Plaintiff's and Class Members' PII and PHI constitutes a material breach of the terms of these agreements by Defendants.

114.    As a direct and proximate result of Defendants' breaches of express contract, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(on behalf of Plaintiff and the Class)**

115.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

116.    When Plaintiff and Class Members provided their PII and PHI to Defendants, they entered into implied contracts with Defendants, under which Defendants agreed to take reasonable steps to protect Plaintiff's and Class Members' PII and PHI, comply with their statutory and common law duties to protect Plaintiff's and Class Members' PII and PHI, and to timely notify them in the event of a data breach.

117.    Defendants solicited and invited Plaintiff and Class Members to provide their PII and PHI as part of Defendants' provision of medical services and related services. Plaintiff and Class Members accepted Defendants' offers and provided their PII and PHI to Defendants.

118.    When entering into implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with their statutory and

28

common law duties to adequately protect Plaintiff's and Class Members' PII and PHI and to timely notify them in the event of a data breach.

119.    Defendants' implied promise to safeguard PII and PHI is evidenced by, *e.g.*, the representations in Defendants' privacy policies set forth above.

120.    Plaintiff and Class Members would not have provided their PII and PHI to Defendants had they known that Defendants would not safeguard their PII and PHI, as promised, or provide timely notice of a data breach.

121.    Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendants.

122.    Defendants breached their implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' PII and PHI and by failing to provide them with timely and accurate notice of the Data Breach.

123.    The losses and damages Plaintiff and Class Members sustained, include, but are not limited to:

a.    Theft of their PII and PHI;

b.    Costs associated with purchasing credit monitoring and identity theft protection services;

c.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future

consequences of the Data Breach – including finding fraudulent charges, cancelling, and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and PHI being placed in the hands of criminals;

g. Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Defendants with the mutual understanding that Defendants would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII and PHI, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i. Emotional distress from the unauthorized disclosure of PII and PHI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

124.    As a direct and proximate result of Defendants' breach of contract, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT V**
**<u>UNJUST ENRICHMENT</u>**
**(on behalf of Plaintiff and the Class)**

125.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

126.    Plaintiff and Class Members have an interest, both equitable and legal, in their PHI and PII that was conferred upon, collected by, and maintained by Defendants and that was stolen in the Data Breach.

127.    Defendants benefitted from the conferral upon them of Plaintiff's and Class Members' PII and PHI, and by their ability to retain and use that information. Defendants understood that they so benefitted.

128.    Defendants also understood and appreciated that Plaintiff's and Class Members' PHI and PII was private and confidential and that its value depended upon Defendants maintaining its privacy and confidentiality.

129.    But for Defendants' willingness and commitment to maintain its privacy and confidentiality, that PHI and PII would not have been transferred to and entrusted with Defendants. Further, if Defendants had disclosed that their data security measures were inadequate, Defendants would not have been permitted to continue in operation by regulators and the healthcare marketplace.

130.    As a result of Defendants' wrongful conduct as alleged in this Complaint (including, among other things, their failure to employ adequate data security measures, their continued maintenance and use of Plaintiff's and Class Members' PHI without having adequate data security measures, and their other conduct facilitating the theft of that PHI and PII), Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

131.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiff's and Class Members' sensitive PHI and PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

132.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving, without justification, from the use of Plaintiff's and Class Members' PHI and PII in an unfair and unconscionable manner. Defendants' retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

133.    The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendants to retain the benefit.

## COUNT VI
## INJUNCTIVE/DECLARATORY RELIEF
### (on behalf of Plaintiff and the Class)

134.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

135.    Defendants owe a duty of care to Plaintiff and Class Members requiring them to adequately secure PII and PHI.

136.    Defendants still store Plaintiff's and Class Members' PII and PHI.

137.    Since the Data Breach, Defendants have announced no specific changes to their data security infrastructure, processes, or procedures to fix the vulnerabilities in their computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

138.    Defendants have not satisfied their legal duties to Plaintiff and Class Members.

139.    Actual harm has arisen in the wake of the Data Breach regarding Defendants' duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and Defendants' failure to address the security failings that led to that exposure.

140.    Plaintiff, therefore, seeks a declaration: (a) that Defendants' existing security measures do not comply with their duties of care to provide adequate security; and (b) that to comply with their duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to, the following:

   a.  ordering that Defendants engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

   b.  ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

   c.  ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

   d.  ordering that Defendants segment PHI by, among other things, creating firewalls and access controls so that if one area of Defendants' system is compromised, hackers cannot gain access to other portions of Defendants' systems;

   e.  ordering that Defendants purge, delete, and destroy in a reasonably secure manner PII and PHI not necessary for their provision of services;

f.   ordering that Defendants conduct regular computer system scanning and security checks; and

g.   ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a.   for an Order certifying the Class as defined herein, and appointing Plaintiff and his counsel to represent the Class;

b.   for equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c.   for equitable relief compelling Defendants to use appropriate cybersecurity methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d.   for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.   for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.   for prejudgment interest on all amounts awarded; and

g.   such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: January 19, 2024                    Respectfully submitted,

                                           **BAILEY & GLASSER LLP**


                                           */s/ Elizabeth Ryan*
                                           Elizabeth Ryan, Esq.
                                           Bar No. 549632
                                           eryan@baileyglasser.com
                                           176 Federal Street, 5th Floor
                                           Boston, MA 02110
                                           (617) 439-6730

                                           **BAILEY GLASSER LLP**
                                           Bart D. Cohen, Esq. (*pro hac vice* forthcoming)
                                           Lawrence J. Lederer, Esq.
                                           1622 Locust Street
                                           Philadelphia, PA  19103
                                           (215) 274-9420
                                           bcohen@baileyglasser.com
                                           llederer@baileyglasser.com

                                           **CRIDEN & LOVE, P.A.**
                                           Michael Criden, Esq.
                                           Lindsey C. Grossman, Esq.
                                           7301 SW 57th Court, Suite 515
                                           South Miami, Florida 33143
                                           (305) 357-9000
                                           mcriden@cridenlove.com
                                           lgrossman@cridenlove.com

                                           *Attorneys for Plaintiff and the Proposed Class*